ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| UNIÓN DE TRABAJADORES DEL DEPARTAMENTO DE HACIENDA LOCAL 2373<br><br>Recurrido<br><br>V.<br><br>DEPARTAMENTO DE HACIENDA<br><br>Peticionario | KLCE202400586 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala San Juan<br><br>Caso Núm. SJ2024CV00209<br><br>Sobre: IMPUGNACIÓN DE LAUDO DE ARBITRAJE EMITIDO POR EL ÁRBITRO ANDRÉS FELICIANO MORALES, DE LA COMISIÓN APELATIVA DEL SERVICIO PÚBLICO, EN EL CASO AQ-16-0749/L-23-051 |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

**Rivera Pérez, Jueza Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de junio de 2024.

Comparece ante nos la parte querellada-peticionaria Departamento de Hacienda de Puerto Rico (en adelante, Departamento de Hacienda) mediante un recurso de *certiorari* y nos solicita la revisión de la *Sentencia* dictada y notificada el 11 de marzo del 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan ("TPI"), en revisión del Laudo de Arbitraje L-23-051 (en adelante, Laudo L-23-051) emitido y notificado el 11 de diciembre de 2023 por la Comisión Apelativa del Servicio Público (en adelante, CASP).

Mediante la referida sentencia, el TPI declaró Ha Lugar el recurso de *Impugnación de Laudo* presentado por la parte querellante-recurrida Unión de Trabajadores del Departamento de

Hacienda (en adelante, Unión), en representación de la Sra. Ida Santiago Rivera (en adelante, Sra. Santiago Rivera), empleada del Departamento de Hacienda. En consecuencia, se dejó sin efecto el Laudo L-23-051 y se ordenó a las partes a arbitrar los asuntos según lo establecido en el *Convenio Colectivo de la Unión de Trabajadores de Hacienda Local 2373 UAW Unidad C y el Departamento de Hacienda (Mayo 2012-Mayo 2015)* (en adelante, Convenio Colectivo).

Por los fundamentos que expondremos, se expide el auto de *certiorari* y se confirma la sentencia recurrida

**I**

Del expediente del caso de autos surge que el 23 de mayo de 2016 el Departamento de Hacienda denegó la solicitud de examen para el puesto de Ejecutivo en Asuntos Contributivos I presentada por la Sra. Santiago Rivera, afiliada de la Unión AUW Local 2373.[1] El 27 de mayo de 2016, la Sra. Santiago Rivera solicitó la reconsideración de dicha determinación ante la Oficina de Asuntos Administrativos de Personal.[2] Finalmente, el 1 de septiembre de 2016, la Secretaria Interina Auxiliar de Recursos Humanos denegó la solicitud de reconsideración presentada por la Sra. Santiago Rivera. En el dictamen, la Secretaria Interina Auxiliar de Recursos Humanos le advirtió a la Sra. Santiago Rivera que, de no estar de acuerdo con esta determinación, tenía derecho a apelar la misma ante la CASP.[3]

Así las cosas, el 26 de septiembre de 2016, la Sra. Santiago Rivera procedió a presentar por derecho propio ante la Oficina de Arbitraje de la CASP la *Solicitud de Servicios de Arbitraje de Quejas y Agravios* (Caso Núm. AQ-16-0749) que nos ocupa, mediante la cual impugnó la determinación del Departamento de Hacienda

---

[1] Véase, apéndice del *Certiorari*, pág. 1.
[2] Véase, apéndice del *Certiorari*, págs. 2-3.
[3] Véase, apéndice del *Certiorari*, pág. 4.

denegándole su solicitud de examen para el puesto de Ejecutivo en Asuntos Contributivos I en la agencia. Además, impugnó la determinación emitida por el Departamento de Hacienda denegándole la solicitud de reconsideración que presentó posteriormente contra la denegatoria de la solicitud de examen.[4]

Luego de varios incidentes procesales, y estando pendiente la celebración de una vista, el 16 de agosto de 2023, el Departamento de Hacienda presentó una *Moción Solicitando Desestimación*.[5] En síntesis, el Departamento de Hacienda alegó que la CASP no tenía jurisdicción para atender en sus méritos la querella presentada por la Sra. Santiago Rivera por no haber sido autorizada y tramitada a través de la Unión, conforme a lo establecido en el Artículo 11 del Convenio Colectivo.

El 7 de septiembre de 2023, se celebró una *Vista* ante el Hon. Andrés Feliciano Morales, Árbitro de la CASP, por medio de videoconferencia, en la cual las partes tuvieron la oportunidad de presentar prueba y argumentar a favor de sus respectivas posiciones con relación a la solicitud de desestimación presentada por el Departamento de Hacienda.[6] La Sra. Santiago Rivera compareció a esta vista representada por la Unión.

El 10 de octubre de 2023, la Unión, en representación de la Sra. Santiago Rivera, presentó *Oposición a Moción Solicitando Desestimación* y el asunto quedó sometido ante la consideración del Árbitro.[7] En síntesis, la Unión alegó en su escrito que el Departamento de Hacienda indujo a error a la Sra. Santiago Rivera al advertirle mediante una carta dirigida exclusivamente a ella que, de no estar de acuerdo con la determinación denegando su solicitud de reconsideración, tenía derecho a apelar la misma ante la CASP

---

[4] Véase, apéndice del *Certiorari*, págs. 5-6. Véase, además, *Íd.*, págs. 1-4.
[5] Véase, apéndice del *Certiorari*, págs. 10-19.
[6] Véase, apéndice del *Certiorari*, págs. 41-57.
[7] Véase, apéndice del *Certiorari*, págs. 20-40.

dentro del término de treinta (30) días a partir de la fecha de notificación; y al no advertirle que el proceso de apelación debía tramitarse a través de la Unión.[8]

El 11 de diciembre de 2023, la CASP emitió y notificó el Laudo L-23-051.[9] En el Laudo, una vez evaluado el asunto tomando en consideración el Convenio Colectivo, las contenciones de las partes y la evidencia admitida, la CASP concluyó y resolvió lo siguiente:

> "[...] En este caso, el convenio obligaba a la Querellante a presentar su queja mediante la Unión y con su autorización. De ahí que la Sección 8 dispone: "Todas las controversias, disputas, querellas y reclamaciones se harán por escrito, **autorizadas por la Unión o el Departamento utilizando el formulario aplicable. En todos los pasos del Procedimiento de Quejas y Agravios y Arbitraje el/los empleado(s) deberán tramitar su querella a través de la Unión"**. [...]
>
> A falta de cumplimiento con lo anterior, tenemos que sujetarnos a lo convenido por las partes, sobre lo dispuesto en la sección 15 del Inciso 9.4. respecto a que: "El árbitro no tendrá facultad para enmendar, modificar, anular, ignorar, añadir o substraer ninguna de las cláusulas del Convenio Colectivo". Por consiguiente, nos es forzoso concluir que la presente controversia no es arbitrable en su vertiente sustantiva, basado en que la prueba presentada mostró de forma fehaciente que la Querellante, en ausencia a radicar su reclamación por conducto de la Unión, en el mejor de los escenarios, tampoco no tenía autorización por dicha parte para presentar la queja en arbitraje por derecho propio. Determinar lo contrario, sería excedemos de la facultad que las partes nos concedieron ejecutar y por consecuencia, incurriríamos en violación a la sección 15 citada. Es por todo lo anterior y luego de aquilatada la prueba, el derecho y el Convenio Colectivo aplicable a los hechos, que estamos en posición de emitir el siguiente:
>
> ### VI. LAUDO
> **La controversia de epígrafe no es arbitrable sustantivamente, toda vez que la Querellante no radicó la presente controversia en arbitraje por conducto de la Unión; en la alternativa, tampoco demostró haber estado autorizada por dicha parte cuando radicó el presente caso por derecho propio. Como resultado, se desestima la controversia y se deja sin efecto el señalamiento para vista en los méritos del caso, el 21 de diciembre de 2023. [...].**[10]
> (énfasis en el original)

---

[8] Carta con fecha del 1 de septiembre de 2016 remitida por la Secretaria Auxiliar Interina del Área de Recursos Humanos y Asuntos Laborales del Departamento de Hacienda. Véase, apéndice del *Certiorari*, pág. 4.

[9] Véase, apéndice del *Certiorari*, págs. 41-57.

[10] Véase, apéndice del *Certiorari*, págs. 14-15.

En desacuerdo con la determinación de la CASP, el 10 de enero de 2024, la Unión presentó ante el TPI un recurso de *Impugnación de Laudo*,[11] al cual se opuso el Departamento de Hacienda mediante *Oposición a "Petición de Revisión de Laudo"* presentada el 16 de febrero de 2024.[12] En su recurso, la Unión señaló la comisión por la CASP de los errores siguientes:

> ERRÓ EN DERECHO EL ÁRBITRO AL DETERMINAR QUE LA QUERELLA NO ES ARBITRABLE SUSTANTIVAMENTE, CUANDO EL ARGUMENTO PRESENTADO POR LA AGENCIA EN TODO CASO ES UNO DE ARBITRABILIDAD PROCESAL, DEFENSA QUE FUE RENUNCIADA POR LA AGENCIA.
>
> ERRÓ EN DERECHO EL ÁRBITRO AL DETERMINAR QUE LA QUERELLA NO ES ARBITRABLE SUSTANTIVAMENTE, CUANDO LA NOTIFICACIÓN A LA EMPLEADA FUE DEFECTUOSA.

El 11 de marzo del 2024, el Tribunal de Primera Instancia dictó y notificó la *Sentencia* de la cual se recurre declarando Ha Lugar el recurso de *Impugnación de Laudo* presentado por la Unión.[13] En consecuencia, se dejó sin efecto el Laudo L-23-051 y se ordenó a las partes a arbitrar los asuntos según lo establecido en el Convenio Colectivo. En su dictamen, el TPI concluyó y resolvió lo siguiente:

> "Resulta claro del Convenio Colectivo que las partes no acordaron arbitrar disputas fuera de aquellas traídas por la Unión o el Departamento. En las etapas previas al arbitraje, el Departamento no tuvo reparo a la acción directa de Santiago, y el Departamento ni siquiera notificó a la Unión de su determinación en el Tercer Paso del procedimiento de disputas. Por otro lado, resulta también evidente que el Departamento no le notificó adecuadamente a Santiago de su derecho a acudir a la CASP ya que no se le advirtió que para ejercer ese derecho tenía que hacerlo a través de la Unión. La notificación adecuada es un derecho constitucional en función del debido proceso de ley, y no puede depender de la experiencia o historial de la querellante por quejas y agravios anteriores.
>
> No hay controversia que Santiago siempre compareció a través de la Unión en todo el proceso posterior a la

---

[11] Véase, apéndice del *Certiorari*, págs. 58-85.
[12] Véase, apéndice del *Certiorari*, págs. 86-102.
[13] Véase, apéndice del *Certiorari*, págs. 103-108.

solicitud de arbitraje. La Unión compareció a la vista en representación de Santiago, se opuso a la desestimación, propuso y negoció con el Departamento los respectivos proyectos de sumisión, y presentó la oposición a desestimación. En fin, todas las comparecencias ante el árbitro fueron a través de la Unión. De ese modo, cualquier defecto en la Solicitud de Santiago, atribuible a la notificación defectuosa, quedó subsanado antes de que iniciara la intervención del Árbitro."[14]

El 26 de marzo de 2024, el Departamento de Hacienda presentó una *Moción de Reconsideración*, a la cual se opuso la Unión mediante *Moción en Oposición a Moción de Reconsideración* presentada el 26 de abril de 2024.[15]

Finalmente, el 29 de abril de 2024, el TPI emitió y notificó *Orden* declarando Sin Lugar la moción de reconsideración.[16]

Inconforme con la determinación del TPI, el Departamento de Hacienda acudió ante nos el 28 de mayo de 2024 mediante el presente recurso de *Certiorari* solicitando la revisión de la *Sentencia* de 11 de marzo de 2024. En su recurso, el Departamento de Hacienda señala que el foro recurrido cometió el error siguiente:

> El TPI abusó de su discreción y actuó contrario a derecho al no concederle deferencia a la interpretación del Árbitro Andrés Feliciano Morales de la Comisión Apelativa del Servicio Público incluida en el laudo L-23-051, pues sustituyó el criterio de dicho árbitro por el del Tribunal, lo anterior por medio de una interpretación *de novo* sobre los hechos y el derecho que dieron lugar a la desestimación por falta de jurisdicción en la modalidad de arbitrabilidad sustantiva de la apelación instada por la Querellante–Apelada y a pesar de que dicho laudo fue emitido conforme a derecho.

El 7 de junio de 2024, la Sra. Santiago Rivera presentó una *Moción de Desestimación del Recurso de Certiorari* por falta de jurisdicción al haberse presentado fuera del término que provee la ley para recurrir. En síntesis, la Sra. Santiago Rivera alega que procede la desestimación del recurso basada en que la moción de reconsideración presentada por el Departamento de Hacienda el 26

---

[14] Véase, apéndice del *Certiorari*, pág. 108.
[15] Véase, apéndice del *Certiorari*, págs. 109-123 y 124-130.
[16] Véase, apéndice del *Certiorari*, pág. 131.

de marzo de 2024 no cumplía con las especificidades de la Regla 47 de Procedimiento Civil, 32 LPRA Ap. V., R. 47, por lo que fue declarada sin lugar por el TPI y no tuvo el efecto de interrumpir el término para recurrir. Según su contención, los treinta (30) días para la presentación de un recurso de *certiorari* comenzaron a transcurrir a partir de la notificación de la *Sentencia* de 11 de marzo de 2024, y no de la *Orden* de 29 de abril de 2024 declarando Sin Lugar la moción de reconsideración.

En la alternativa, la Sra. Santiago Rivera alega que no aplica el término de sesenta (60) días que establece la Regla 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.2, para aquellos casos en que el Estado Libre Asociado es parte debido a que se trata de un recurso de *certiorari* para revisar una sentencia final al revisar un laudo de arbitraje del Tribunal de Primera Instancia, para lo cual la Regla 26 del Reglamento del Tribunal de Apelaciones,4 LPRA Ap. XXII-B, R. 32, establece un término de treinta (30) días. De entenderse que aplica, la Sra. Santiago Rivera alega que la presentación del recurso resulta igualmente tardía.

El 10 de junio de 2024, el Departamento de Hacienda presentó una Réplica y/u Oposición a *"Moción de Desestimación del Recurso de Certiorari."*

El 24 de junio de 2024, la Sra. Santiago Rivera presentó *Alegato de la Parte Recurrida en Contra de la Expedición del Auto de Certiorari.* Así, contando con la comparecencia de las partes, procedemos a resolver.

**II**

**A.**

El recurso de *certiorari* es el vehículo procesal para que el Tribunal de Apelaciones revise la sentencia final dictada por el Tribunal de Primera Instancia al revisar un laudo de arbitraje. Regla 32(D) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-

B, R.32(D); *Hosp. del Maestro v. U.N.T.S.*, 151 DPR 934 (2000). Este recurso discrecional "permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Véase, además, *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005).

En el ámbito judicial, el concepto discreción "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". *IG Builders et al. v. BBVAPR*, supra, pág. 338. La discreción, "es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, supra, a la pág. 174.

En el caso particular del Tribunal de Apelaciones, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita los asuntos interlocutorios que podemos revisar mediante un recurso de *certiorari*, bajo el entendimiento de que estos pueden esperar hasta la conclusión del caso para ser revisados en apelación. *IG Builders et al. v. BBVAPR*, supra, pág. 337. Al respecto, la Regla 52.1 de Procedimiento Civil, *supra*, dispone específicamente que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57, o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de

rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.* Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

A su vez, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que el Tribunal de Apelaciones deberá tomar en consideración al determinar si procede la expedición de un recurso de *certiorari* o de una orden de mostrar causa. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia." Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

**B.**

En Puerto Rico existe una vigorosa política pública a favor del arbitraje obrero-patronal.[17] El arbitraje está considerado como un método alterno a la intervención judicial para la solución de conflictos. *COPR v. SPU*, 181 DPR 299, 362 (2011). Se entiende que

---

[17] El Tribunal Supremo ha expresado que "las relaciones obrero-patronales, la negociación colectiva, y los procedimientos de arbitraje están vinculadas al desarrollo económico, a la paz industrial y, por ende, a la consecución de los intereses públicos." *COPR v. SPU*, supra, pág. 319.

este es el medio menos técnico, más flexible, menos oneroso y, por tanto, más apropiado para la resolución de las controversias que emanan de la relación laboral. *Martínez Rodríguez v. A.E.E.*, 133 DPR 986 (1993).

El convenio colectivo recoge las normas que habrán de marcar las relaciones entre patronos y empleados, por lo que sus términos y condiciones obligan tanto al patrono como a la unión y a sus miembros. *J.R.T v Junta Adm. Muelle Mun. de Ponce,* 122 DPR 318, 333 (1998). Este constituye la ley entre las partes que lo suscriben, siempre que no contravenga las leyes, la moral ni la Constitución. *Pérez v. Autoridad de Fuentes Fluviales*, 87 DPR 118, 122 (1963). Al pactar su contenido, las partes deben cumplirlo con estricta rigurosidad. Ni el patrono ni los obreros pueden pretender beneficiarse de ciertas cláusulas y rechazar otras. *COPR v. SPU*, supra, seguido en *Aut. Puertos v. HEO*, 186 DPR 417 (2012). Mediante el convenio colectivo, se le confiere la autoridad al árbitro para que evalúe y resuelva las controversias que allí se especifican. A. Acevedo Colom, *Legislación protectora del trabajo comentada*, 8va ed. Rev., Puerto Rico, Ed. Ramallo Printing Bros., 2005, pág. 393.

De otra parte, el laudo de arbitraje es la determinación que toma el árbitro respecto a la controversia laboral. *COPR v. SPU*, *supra*, pág. 368. Se ha establecido que el laudo de arbitraje no es ni un contrato ni una sentencia, pero disfruta de la naturaleza de ambos. *Íd.*, pág. 328. El contenido del laudo de arbitraje incluye dos elementos principales: la parte sustantiva de derecho en la que se expone la razón de la decisión y la parte dispositiva en la que se establece el remedio a la disputa. La emisión del laudo culmina la función adjudicativa del árbitro. *Íd.*, en las págs. 368-369.

Referente a la revisión judicial de los procesos de arbitraje, nuestro más alto foro ha expresado que, aunque la intervención no esté vedada, ante un convenio de arbitraje lo más prudente es la

abstención judicial. *U.C.P.R. v. Triangle Engineering Corp.*, 136 DPR 133 (1994). Por ello, cuando se acuerda el uso del arbitraje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia. *López v. Destilería Serrallés*, 90 DPR 245 (1964); *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 DPR 318 (1988).

Es por esto, que la revisión de los laudos de arbitraje se circunscribe a la determinación de: (1) la existencia de fraude, (2) conducta impropia, (3) falta del debido proceso de ley, (4) violación a la política pública, (5) falta de jurisdicción o, (6) que el laudo no resuelve todos los asuntos en controversia. No obstante, si las partes pactan que el laudo arbitral sea conforme a derecho, los tribunales podrán corregir errores jurídicos en atención al derecho aplicable.[18] De igual modo, las decisiones de los tribunales de primera instancia, de las agencias administrativas y los laudos arbitrales se reputarán persuasivas. *Íd.* En tal supuesto, la revisión judicial de los laudos de arbitraje es análoga a la revisión judicial de las decisiones administrativas. *Rivera v. Dir. Adm. Trib.*, 144 DPR 808 (1998); *Condado Plaza v. Asoc. Emp. Casinos PR*, 149 DPR 347 (1999); *UCPR v. Triangle Engineering Corp.*, supra. Sin embargo, el Tribunal Supremo ha aclarado que la intervención judicial no se justifica por una mera discrepancia de criterio con el árbitro ya que se destruiría la esencia de los procesos de arbitraje. *UGT v. Centro Médico del Turabo*, 208 DPR 944, 929 (2022). Por lo tanto, es la norma que los foros judiciales apelativos tendrán la autoridad para revisar todas las cuestiones de derecho sustantivo resueltas por el árbitro para poder determinar si son correctas. *COPR v. SPU*, supra, pág. 370. Es

---

[18] Cuando el procedimiento de arbitraje es conforme a derecho, ello significa que el árbitro no puede ignorar o dejar pasar por desapercibidas las normas interpretativas, en el campo laboral, de derecho sustantivo emitidas por el Tribunal Supremo de Estados Unidos, y el de Puerto Rico. *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 DPR 62, 68 (1987).

decir, procede la anulación solo si no se ha resuelto la controversia conforme a derecho. *Íd.*

**C.**

El Convenio Colectivo de la Unión de Trabajadores de Hacienda Local 2373 UAW Unidad C y el Departamento de Hacienda (Mayo 2012-Mayo 2015) (en adelante, Convenio Colectivo) es un acuerdo negociado entre el Departamento de Hacienda y la Unión que establece las condiciones de trabajo y los derechos y obligaciones de ambas partes.

Entre otros aspectos, este acuerdo incluye un *Procedimiento de Quejas y Agravios* para resolver disputas que debe seguirse ante de recurrir a arbitraje. Al respecto, el Artículo 11 del Convenio Colectivo establece lo siguiente:

> **"Sección 1:**
> A) Competencia - Todas las controversias, disputas, quejas, querellas y reclamaciones basadas en la aplicación e interpretación de las disposiciones de este Convenio serán de la competencia de los organismos funcionarios designados en este Artículo y de los establecidos por la Ley Núm. 45.
> [...]
> **Sección 2: Definición**
> Se entenderá por "queja, querella y/o agravio", cualquier controversia o reclamación presentada por un empleado o grupo de empleados de la Unidad Apropiada, o por cualquier de las partes, relacionada con la interpretación, aplicación, definición o alegada violación. de este Convenio Colectivo.
> [...]
> **Sección 5:**
> Todos los miembros de la Unidad Apropiada, incluyendo a los no afiliados están obligados a utilizar este procedimiento en cuanto a toda queja o controversia que surja con posterioridad a entrar en vigor el presente Convento Colectivo.
> Sección 6:
> Cuando por escrito las partes hagan constar que una querella sobre un asunto no puede resolverse en una etapa inicial del procedimiento, la misma entonces podrá ser radicada en una etapa avanzada y apropiada para atender la querella.
> **Sección 7:**
> La Unión en representación del empleado podrá retirar las querellas sometidas en este procedimiento en cualquier momento y el empleado no será objeto de sanción disciplinaria por el solo hecho de haber radicado la querella.
> **Sección 8:**

Todas las controversias, disputas, quejas, querellas y reclamaciones se harán por escrito, autorizadas por la Unión o el Departamento utilizando el formulario aplicable. En todos los pasos del Procedimiento de Quejas y Agravios y Arbitraje el/los empleados(s) deberán tramitar su querella a través de la Unión.

**Sección 9:**

Toda queja, querella o agravio se tramitará exclusivamente conforme a los mecanismos creados en este Artículo. Las Partes acuerdan en este Convenio que, de surgir controversias durante la vigencia del mismo, éstas se resolverán exclusivamente a través del procedimiento que a continuación se dispone:

**Inciso 9.1 - PRIMER PASO-Supervisor Inmediato**

a) La querella deberá someterse no más tarde de diez (10) días laborables a parar de la fecha en que sucedieron los hechos que dieron lugar a la querella ante el Supervisor Inmediato.

b) El empleado a través del delegado y/o el oficial designado de la Unión, se reunirá con su Supervisor inmediato en un término no mayor de diez (10) días laborables después de la Unión haber sometido su querella por escrito. El Supervisor del área de trabajo coordinará con el delegado y/o el oficial: designado de la Unión dicha reunión dentro del término antes dispuesto para discutir la controversia.

[...]

**Inciso 9.2 - SEGUNDO PASO - Director del Negociado o Secretaria Auxiliar del Área**

a) De no resolverse la controversia en la primera etapa del Procedimiento de Quejas y Agravios, o la Unión no estar de acuerdo con la decisión tomada por el Supervisor Inmediato el oficial designado por la Unión, podrá someter por escrito la querella al Director del Negociado o Secretario Auxiliar del Área de trabajo correspondiente; dentro de los diez (10) días laborables a partir de la fecha en que el supervisor notificó su decisión.

[...]

**Inciso 9.3 - TERCER PASO - Secretarlo(A) Auxiliar De Recursos Humanos y Oficial Designado Por Éste(A)**

De no resolverse la controversia en la segunda etapa del Procedimiento de Quejas y Agravios, o la Unión no estar de acuerdo con la decisión tomada por el Director del área de trabajo, el empleado a través del oficial designado de la Unión podrá someter por escrito la misma el Secretario(a) Auxiliar de Recursos Humanos u oficial designado por éste(a), dentro de los diez (10) días laborables a partir de la fecha en que la Unión recibió la notificación donde el Director del área de trabajo emitió su decisión.

[...]

**Inciso 9.4 - CUARTO PASO Oficina de Arbitraje De La Comisión Apelativa del Servicio Público**

De no llegarse a un acuerdo con él (la) Secretari@ Auxiliar de Recursos Humanos y oficial designado por ést@, la Unión procederá a radicar la solicitud de arbitraje ante la Oficina de Arbitraje de la Comisión Apelativa del Servicio laborables, a partir de la fecha en que se notifique la contestación.

[…]

**Sección 12:**

Las partes someterán al árbitro un acuerdo de sumisión, donde especificarán la controversia para su resolución. En la eventualidad de que las partes no logren un acuerdo de sumisión dentro de un término razonable, el árbitro determinará el asunto preciso a ser resuelto tomando en consideración el Convenio Colectivo, las contenciones de las partes, los proyectos de sumisión de cada una de las partes y la evidencia, admitida. Si una de las partes alega que la controversia no es arbitrable, procesalmente deberá someter la evidencia pertinente al árbitro en apoyo de su alegación. De no hacerlo, se considerará que la controversia es arbitrable y el árbitro procederá a ventilar el caso en sus méritos.

**Sección 13:**

La cuestión de arbitrabilidad será decidida en primera instancia por el árbitro, pero podrá ser objeto de revisión judicial.

[…]

**Sección 15:**

El árbitro no tendrá facultad para enmendar, modificar, anular, ignorar; añadir o substraer ninguna de las cláusulas del Convento Colectivo.

[…]."

## III

En su recurso de *Certiorari*, el Departamento de Hacienda señala como único error que el TPI "abusó de su discreción y actuó contrario a derecho al no concederle deferencia a la interpretación del Árbitro […], pues sustituyó el criterio de dicho árbitro por el del Tribunal, lo anterior por medio de una interpretación *de novo* sobre los hechos y el derecho que dieron lugar a la desestimación por falta de jurisdicción en la modalidad de arbitrabilidad sustantiva de la apelación instada por la Querellante–Apelada y a pesar de que dicho laudo fue emitido conforme a derecho."

Examinado el recurso, así como la determinación del dictamen recurrido a la luz del Derecho expuesto, determinamos que el error antes señalado no se cometió. Coincidimos con el razonamiento del Tribunal de Primera Instancia. Aunque la Sra. Santiago Rivera no estuvo representada por la Unión durante los pasos del procedimiento de quejas y agravios previos al arbitraje establecidos en el Convenio Colectivo, posteriormente fue

debidamente representada por dicho sindicato quien confirmó y validó los actos jurídicos de su afiliada quedando así subsanada cualquier deficiencia en el proceso.

Aunque existe una norma de abstención judicial referente a la revisión judicial de los procesos de arbitraje, sin embargo, procede su intervención cuando son asuntos estrictamente de derecho. *U.C.P.R. v. Triangle Engineering Corp.*, supra. En este caso en particular la Unión luego de la fase de quejas y agravios representó a la parte querellada-peticionaria, y se sometió como Unión al proceso de arbitraje no quedando así privada su representada del remedio contemplado en el Convenio Colectivo.

En conclusión, dadas las circunstancias particulares que presenta este caso, era procedente someterlo a arbitraje.

**IV**

Por los fundamentos expuestos, se expide el recurso de *certiorari* y se confirma la sentencia recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones